IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

FILED
MAY 27 PM 2: 19
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
MAY 27 2003

| | |
|---|---|
| T.H.E. INSURANCE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) CIVIL ACTION NO. 00-G-1146-S |
| MASON PRO RADIO PRODUCTIONS, INC.; LEROY MASON; WILLIAM M. LAWSON, JR.; MARY D. LAWSON, | ) ) ) ) |
| Defendants. | ) |

MEMORANDUM OPINION

This cause is before the court upon cross motions for summary judgment. This action was filed by T.H.E. Insurance Company ("T.H.E.") seeking a declaratory judgment concerning insurance coverage. T.H.E. issued a policy of insurance to defendant Mason Pro Rodeo Productions, Inc. ("Mason Pro Rodeo"). Mason Pro Rodeo and its employee, Leroy Mason, were sued in an underlying liability action by defendants William M. Lawson, Jr. and Mary D. Lawson in the Circuit Court of Jefferson County, Alabama ("underlying lawsuit").[1] That complaint seeks damages for personal injuries sustained by Mr. Lawson, whose on-air moniker is "Dollar Bill," while he was riding a

---

[1] T.H.E. has filed a motion for default judgment against defendants Leroy Mason and Mason Pro Rodeo Productions. Based upon the submission of Mr. Mason and posture of the pending summary judgment motions, the court will deny plaintiff's motion for a default judgment.

bull named "Widow Maker" as part of a promotion at the rodeo known as "Dollar Bill Night." In the underlying lawsuit Mr. Lawson alleges that he believed he would be riding a docile bull and that there would be a saddle on the bull. The underlying complaint contains the following allegations:

> 6. As part of the promotion for said rodeo, Mason solicited and provided the Plaintiff, William Lawson, a bull to ride as a promotion known as "Dollar Bill Night" in cooperation with WZZK, and further represented to Plaintiff that the bull the Plaintiff would be riding would be a docile and calm bull, would not be dangerous in any manner, and would be so calm that he may even have to be led out of the shoot [sic.] or holding pen area.
>
> 7. Mason further represented to the Plaintiff that Plaintiff was simply to go to the bull when told to by Mason's employees, to get up on the bull, and then follow the instructions of the Mason's employees.
>
> 8. Mason further represented to Plaintiff that there would be a saddle on the bull for which Plaintiff would be able to sit in. As instructed by Mason's employees the Plaintiff got up on the bull when told to do so, and at that point plaintiff was tied down to the bull by cinching Plaintiff's hand to the back of the bull. Plaintiff discovered at that point in time that there was no saddle and when Plaintiff expressed concern over this, he was assured by Mason's employees that it was not necessary. While plaintiff was unaware of the consequences, Mason's employees also at that time, cinched the backside of the bull to get the bull in an appropriate state of anger and aggression. Plaintiff was reassured by Mason's employees that the bull was indeed docile and calm and completely safe and may have to be even led around the arena.
>
> 9. Shortly after Plaintiff was cinched to the bull, the bull was released from the pen into the arena. At the time the bull was released from the holding area into the arena with plaintiff tied down to the bull, the bull began to violently buck and twist leaving the ground with all four legs and more than once becoming airborne with plaintiff strapped to him.
>
> 10. As a direct result of Defendant's bull [sic.] aggressive behavior, the Plaintiff, William Lawson was thrown from the bull, but because Mason's

employees had tied Plaintiff to the bull, Plaintiff could not free himself
from the bull immediately and was dragged beneath the bull and stomped
on by the full weight of the bull.

Mr. Mason seeks damages in the underlying lawsuit for personal injuries allegedly sustained as a result of the incident and his wife seeks damages for loss of consortium.

## DISCUSSION

The first question that must be answered is which state's law governs the interpretation of the insurance contract. Federal courts sitting in diversity apply the choice of law rules of the forum state. <u>Klaxon Co. v. Stentnor Elec. Mfg. Co., Inc.</u>, 61 S. Ct. 1020, 1021-22 (1941). Alabama courts follow the traditional principle of <u>lex loci contractus</u> in determining what law to apply. Under that rule, "a contract is governed as to its nature, obligation, and validity by the law of the place where it was made, unless the parties intend the law of some other place to govern, or unless it is to be wholly performed in some other place." <u>Ex Parte Owen</u>, 437 So. 2d 476 (Ala. 1983). It is undisputed that the contract of insurance was entered into in Florida. Therefore, Florida law governs its interpretation.

T.H.E. issued a policy of commercial general liability insurance to Mason Pro Rodeo. The policy contained the following exclusion:

EXCLUSION - PARTICIPANTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

3

>This policy does not provide coverage of any kind for any person practicing for or participating in any organized sport, athletic contest or exhibition.
>
>This exclusion shall not apply to participation by a person in a non-organized recreational activity or sport.

T.H.E. argues that this exclusion applies to the facts alleged in the underlying lawsuit. In Jefferson Insurance Company of New York v. Sea World of Florida, Inc., 586 So. 2d 95 (Fla. Dist. Ct. App. 1991), the Florida appellate court interpreted an exclusion similar to the one in the present case. The exclusion in Sea World reads as follows:

>Endorsement # 1
>EXCLUSION
>(EXHIBITION PARTICIPANTS)
>
>... [T]he insurance does not apply to bodily injury to any person while performing in any exhibition or diving event sponsored by the named insured.

586 So. 2d at 97. In Sea World, a participant in a water ski show was killed while driving a jet ski. 586 So. 2d at 96. The appellate court summarized the trial court's holding as follows:

>The trial court found this exclusion to be ambiguous, reasoning that the term "exhibition," which was not further defined in the policy, could have "as many definitions as those who chose to define it." Since it is well settled that any ambiguity in an insurance contract is resolved in favor of the insured and against the insurer, because the insurance company drafted the contract, the trial court found this exclusion also to be inapplicable.

586 So. 2d at 97 (citations omitted). The appellate court, however, disagreed with the trial court's construction of the exclusionary clause, noting that even though uncertainties

4

and ambiguities are to be construed against the insurer, "this does not mean that courts are authorized to put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." 586 So. 2d at 97. The court noted that the purpose of such exclusions "is to except from liability coverage the risks which are normally encountered in practicing for or participating in a particular sports contest or exhibition." 586 So. 2d at 97. The court adopted a test announced in <u>Garcia v. St. Bernard School Parish</u>, 576 So. 2d 975 (La. 1991), to determine whether such an exclusion applies. Under that test the insurer has the burden of demonstrating:

> (1) that the event in which the person was injured was a contest or exhibition; (2) that the contest or exhibition was of an athletic or sports nature; (3) that the contest or exhibition was sponsored by the named insured; and (4) that the injured person was practicing for or participating in the contest or exhibition at the time of the injury.

586 So. 2d at 97-98 (quoting <u>Garcia</u>, 576 So. 2d at 976-977).

In <u>Sea World</u>, even though the exclusion literally applied "to any person while performing <u>in any exhibition</u> or diving event sponsored by the named insured," (emphasis added) the appellate court interpreted "any exhibition" in light of the context of the exclusionary clause so as to require that the exhibition be of an athletic or sports nature. Similarly, the exclusion in the present case, must be read in light of its purpose and "exhibition" must be read to mean "exhibition of a sports or athletic nature." It is undisputed that the event at which Mr. Lawson was allegedly injured was sponsored by the insured. The remaining elements of the <u>Sea World</u> test require that T.H.E. prove

5

Mr. Lawson was either practicing for, or participating in, a contest or exhibition of an athletic or sports nature when he was allegedly injured.

A review of the Garcia case shows that the exclusionary clause is not applicable to the events alleged in the underlying lawsuit by Mr. and Mrs. Lawson. In Garcia, the issue was whether insurance coverage was excluded "for an injury sustained by a high school cheerleader while performing an acrobatic stunt during a football game." 576 So. 2d at 975. The court noted that "[n]one of the cases reviewed from other jurisdictions involved an injury in an exhibition ancillary to the principal contest sponsored by the insured." 576 So. 2d at 977. It reasoned as follows:

> While a school board typically sponsors additional activities incidental to football contests, such as performances by cheerleaders, bands, pep squads, flag squads, drill teams and the like, these groups are not participants in the football contest, and an injury to a member of these groups during a football game is not clearly within the contemplation of the policy provision.
>
> Arguably, the policy provision may apply to injuries during cheerleading contests, either intramural or in competition among several schools, but here there was no contest and no winner to be chosen. Arguably, the provision may apply to injuries during an exhibition of cheerleading which is an independent event sponsored by the school, but here there was no showing that there was a cheerleading exhibition independent of the football contest. Even if this cheerleading ancillary to the athletic contest could reasonably be interpreted as an exhibition contemplated by the policy, it could with at least equal reasonableness be interpreted to the contrary.

576 So. 2d at 977 (footnote omitted). The participation of Mr. Lawson in the rodeo is akin to that of the injured cheerleader in Garcia. It cannot be genuinely disputed that the

exhibition in which Mr. Lawson participated was not part of the rodeo competition itself, but rather was ancillary thereto. Mr. Lawson was not a contestant in a sporting event. He without question was not competing in the rodeo contest. Nor, based upon his allegations in the underlying lawsuit, was he a participant in an exhibition of an athletic or sports nature. The promotion was not intended to display Mr. Lawson's athletic or sports skills. There is, in fact, no allegation that Mr. Lawson possessed any athletic or sports skills related to bull riding. None of these facts can be genuinely disputed. His participation in the rodeo, therefore, is clearly analogous to "performances by cheerleaders, bands, pep squads, flag squads, drill teams and the like" at football games. Therefore, under the rationale of Garcia, as adopted by Sea World, he was not a contestant or participant in the rodeo and the exclusionary clause does not apply.

      There being no genuine issue as to any material fact, and defendant's William M. Lawson, Jr. and Mary D. Lawson being entitled to a judgment as a mater of law, an appropriate order will be entered contemporaneously herewith declaring that the exclusion relied upon by T.H.E. does not exclude coverage under the facts alleged in the underlying lawsuit. Plaintiff's motion for summary judgment will be denied.

DONE this 27th day of May 2003.

                                        UNITED STATES DISTRICT JUDGE
                                        J. FOY GUIN, JR.